UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 12-92-HRW

BERTHA M. DOSS,                                      PLAINTIFF,

v.               **MEMORANDUM OPINION AND ORDER**

ST. CLAIRE MEDICAL CENTER, INC.
d/b/a ST. CLAIRE REGIONAL MEDICAL CENTER,           DEFENDANT.

This matter is before the Court upon Defendant's St. Claire Medical Center, Inc. d/b/a St. Claire Regional Medical Center's Motion for Summary Judgment [Docket No. 24]. The motion has been fully briefed by the parties [Docket Nos. 24-1, 27 and 29] and, for the reason set forth below, the Court finds that Defendant is entitled to judgment as a matter of law.

**I. BACKGROUND**

Plaintiff Bertha Doss was hired by Defendant St. Claire Medical Center, Inc. d/b/a St. Claire Regional Medical Center ("St. Claire") on May 5, 2009 as a Chief Certified Nurse Anesthetist ("CRNA"). Upon her hiring, Plaintiff entered into an Employment Agreement with St. Claire which permitted either party to terminate the Agreement "without cause by giving not less than ninety (90) days' prior written notice of termination to the other party . . ." [Exhibit to Deposition of Bertha Doss, Docket No. 15-7, ¶ 1]. The Agreement also allowed St. Claire to terminate for cause without any notice requirement. *Id.* at ¶ 9.

St. Claire terminated Plaintiff's Employment Agreement without cause by giving her the required notice. By letter dated March 21, 2011 St. Claire's Vice President of Administration,

Travis Bailey, notified Plaintiff that her last day of employment would be June 18, 2011 [Exhibit to Deposition of Bertha Doss, Docket No. 15-27].

In the letter, Mr. Bailey stated that Plaintiff had not met St. Claire's expectations. He states "[t]hese concerns include but are not limited to repeated poor student interaction, ineffective leadership skills, not acting in a harmonious manner to staff and failure to effectively evaluate and supervise staff." *Id.* Thus it appears that although Plaintiff's performance deficiencies were sufficient to warrant termination of the Agreement for cause, St. Claire terminated Plaintiff without cause, which under her Agreement allowed her an additional ninety days' compensation. However, Plaintiff took FMLA leave and did not work for St. Claire during this notice period.

On September 28, 2012, Plaintiff filed this lawsuit against St. Claire alleging that she was discharged from her employment as the Chief CRNA at SCR in violation of the Kentucky Civil Rights Act, KRS § 344.040, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Kentucky Civil Rights Act, KRS § 344.010, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and in retaliation for making her supervisors aware of alleged violations of law.

Discovery in this matter is complete. St. Claire now seeks judgment as a matter law upon all claims alleged against it herein.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56( c). The moving

2

party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court views all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). " 'The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [non-moving party].' " *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

### III. ANALYSIS

In her response to St. Claire's dispositive motion, Plaintiff withdrew her claims of discrimination based upon her gender and age {Docket No. 27, p. 1]. Therefore, this Court will address the two remaining claims - discrimination based upon race and retaliatory discharge.

**A. Plaintiff has not alleged a *prima facie* case of discrimination based upon race.**

Both the Kentucky Civil Rights Act, KRS § 344.040 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e makes unlawful an employer's decision "to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin[.]" 42 U.S.C. § 2000e - 2(a)(1)(1994).

Construing the facts in a light most favorable to Plaintiff, she does allege direct evidence of discrimination. In the absence of such evidence, Plaintiff may make a submissible case by

3

presenting evidence from which one may infer invidious intent behind her termination. The process by which the sufficiency of such a case is tested was first articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

In this paradigm, in order to survive summary judgment, the plaintiff must establish a prima facie case of discrimination. She may do so by introducing evidence sufficient to support a finding that (1) plaintiff was a member of the protected class, (2) plaintiff suffered an adverse employment action, (3) plaintiff was qualified for the position either lost or not gained, and (4) plaintiff was treated less favorably than employees outside her protected class. *McDonnell Douglas*, 411 U.S. at 802. This proof "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254. Once this proof is presented the burden shifts to the employer that the adverse employment action was based upon legitimate, non-discriminatory reasons. The burden then returns to Plaintiff to prove that the proffered reasons are merely pretext for discrimination. Id.

The initial burden is upon Plaintiff. With regard to her prima facie case, St. Claire concedes that Plaintiff, an African American, is a member of a protected class and also concedes that Plaintiff experienced an adverse employment action, to-wit, termination. However, it argues that she did not perform her job satisfactorily. Indeed, the record is replete with documentation of Plaintiff's diminishing performance at work during the months leading to her termination. Further, based upon the record, Plaintiff was not treated differently than similarly-situated employees outside of her protected class – males and non-African-American employees. To be deemed similarly situated, "the individuals with whom the plaintiff seeks to

4

compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992). Almost contemporaneous to Plaintiff's termination, another CRNA was terminated under similar circumstances. Larry Mullins, a Caucasian male, was terminated from his employment with St. Claire in March of 2011. [Deposition of Travis Bailey, Docket No. 20, p. 76]. St. Claire's Vice president of Administration, Travis Bailey, testified that Mr. Mullins was terminated for unsafe conduct that placed patients at risk. [Deposition of Travis Bailey, Docket No. 20, p. 68] Such behavior included refusing to transport intubated patients to the PACU (post-anesthesia care unit) or ICU and instead leaving the student SCRNAs to do so alone, incorrectly performing pre-operative patient assessments, and contributing to the inefficiency of the Anesthesia Department with absenteeism. *Id*. This unsafe conduct violated hospital procedures, jeopardized patient care and placed the hospital at risk. Just like Plaintiff, Mr. Mullins was not meeting the requirements of his position and displayed no improvement despite having notice of his deficiencies.

Additionally, a Caucasian male anesthesiologist, Dr. Richard Maughon, was terminated for performance reasons in late 2009. [Deposition of Travis Bailey, Docket No. 20, p. 43 and 111] A Caucasian male Chief CRNA, Dick Baker, was also terminated by St. Claire for performance reasons. *Id*.

There is no evidence that a similarly situated, non-minority, male employee was treated more favorably than Plaintiff. Indeed, the evidence shows that the opposite to be true. Therefore, Plaintiff has not presented a prima facie case of discrimination based upon race.

In an effort to obscure the insufficiency of the evidence in this regard, Plaintiff points to two incidents which she suggests are not only indicative of discrimination but dispositive evidence of it. The first incident took place in August of 2010. At that time, Plaintiff became aware of a racial comment made about her by Lorrie Springer, the Director of the Program of Nurse Anesthesia at Trover / Murray State. Ms. Springer stated that she was certain Plaintiff "would play the race card" in response to any attempt to terminate her employment [Deposition of Bertha Doss, Exhibit No. 15, p. 60]. Plaintiff was not a witness to the comment but was told about it. It is unclear from the record in what context and to whom the comment was made. The second incident occurred between Larry Mullins and Tom Cibiras, both CRNAs at St. Claire. According to Mr. Mullins, Mr. Cibiras referred to Plaintiff on one occasion as "that nigger bitch." [Affidavit of Larry Mullins, Docket No. 27-5, ¶ 5]. Again, Plaintiff was not present during the conversation between Mr. Mullins and Mr. Cibiras. She was informed of the comment by Mr. Mullins.

Construing the evidence in favor of Plaintiff, the Court will assume that the comments were, in fact, made as alleged. The question remains as to the relevancy of these two incidents in evaluating whether Plaintiff was discriminated against in violation of state and federal law . "In assessing the relevancy of a discriminatory remark, we look first at the identity of the speaker. An isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of ... discrimination." *Ercegovich v. Goodyear*

6

*Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir.1998). Neither Ms. Springer or Mr. Cibiras had managerial authority over Plaintiff. In fact, Ms. Springer was not even employed by St. Claire. Assuming, however, that based upon the symbiotic relationship between St. Claire and Murray State, that Ms. Springer could be considered an employee of St., Claire, she would be a co-worker of Plaintiff. As was Mr. Cibiras. There is no evidence that either was involved in the decision to terminate Plaintiff's employment. " '[S]tatements by nondecisionmakers ... [can not] suffice to satisfy the plaintiff's burden ...' of demonstrating animus." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir.1998) (*quoting Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)); *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1161–62 (6th Cir.1990) (holding that statements of intermediate level management officials were not indicative of discrimination when the ultimate decision to discharge is made by an upper-level official); *Wilson v. Stroh Cos., Inc.*, 952 F.2d 942, 945–46 (6th Cir.1992) (holding that racial animus by plant manager could not be imputed to upper-level manager who made decision to terminate absent proof of a connection) ; *cf. Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1249 (6th Cir.1995) (holding that repeated racial slurs by two owners [of the employer restaurant] constituted direct evidence that the plaintiff's termination might have been racially motivated) (emphasis added). Clearly, the isolate, stray remarks of two co-workers is not tantamount to actionable discrimination.

Taking a different tact, Plaintiff maintains that she was resented by the staff for being the first African American CRNA in a leadership role at St. Claire. She implies that this resentment somehow culminated in her termination. Although not specifically alleged, this Court will interpret Plaintiff's argument as alleging racial discrimination resulting from a hostile work

7

environment. To establish a prima facie hostile work environment claim on the basis of race "a plaintiff must demonstrate that (1) she was a member of a protected class; (2) she was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with [his] work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir.2009). To be actionable pursuant to Title VII and its Kentucky counterpart, the workplace must be so "permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations and citations omitted.).

The Sixth Circuit's opinion in *Smith v. Leggett Wire Company,* 220 F.3d 752 (6th Cir. 2000) is instructive in this regard.. In *Smith,* plaintiff was employed by defendant from 1974 until his termination in 1994. Plaintiff testified that on his first day of work in 1974, an unknown coworker threatened him, stating: "You're [sic] nigger ass ain't going to work here." *Smith,* 220 F.3d at 757. Plaintiff also testified that on one occasion in the late 1980's or early 1990's, his supervisor circulated a racially discriminatory and lewd cartoon around the plant which depicted an African-American man with a rope around his neck and connected to his penis standing in front of a Caucasian woman. *Id.* The cartoon was entitled "How a Black Man Commits Suicide." *Id.* Sometime after 1993, plaintiff heard his supervisor telling a "nigger" joke. *Id.* The supervisor admitted using the term. *Id.* Plaintiff testified also that sometime in the 1990's he heard a foreman referring to a black employee as a "gorilla." *Id.* Based on the above, the Sixth Circuit concluded that the "handful of discriminatory comments" over a twenty-year span of time, "is

8

simply not severe or pervasive enough to create an objectively hostile work environment." *Id.* at 760

Also of note is *Durham v. R.R. Donnelly & Sons Co.*, 1999 WL 551342 (6th Cir. 2000), wherein plaintiff asserted that a supervisor made three racially charged statements during the course of his seven-year employment: (1) we whites brought you over on the ship, fed you, clothed you, housed you, why complain now; (2) plaintiff was ignorant of operations and should not try to advance himself; and (3) plaintiff should not make everything a black and white issue. *Id.* at *9, 187 F.3d 635. The Sixth Circuit determined that the statements did not support a finding of a hostile work environment because they were isolated incidents and not of the extreme nature required by case law. *Id.*

The comments and actions alleged Smith and Durham are more explicit and egregious that what occurred at St. Claire. Racial animus cannot be inferred from Plaintiff's feeling that she was resented or from two discriminatory comments made by a co-workers, heard second-hand by Plaintiff. While the use of racial epithets is certainly deplorable, it is not severe or pervasive enough in this case to amount to discrimination under the precedent discussed *supra*.

The Court is mindful that the posture of this case requires all reasonable inferences to be made in Plaintiff's favor. Nevertheless, there is simply no evidence in the record that Plaintiff was discriminated against by St. Claire on the basis of her race.

**B.     Plaintiff has not alleged a prima facie case of retaliatory discharge.**

It is well established that it is "an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an

9

unlawful employment practice by this subchapter[.]" 42 U.S.C. § 2000e–3(a) (opposition clause). The Supreme Court recently clarified that unlike other civil rights claims, "retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, — U.S. —, —, 133 S.Ct. 2517, 2533 (2013). However, when no direct evidence of retaliation is presented, a plaintiff may prove the claim with circumstantial evidence under the familiar burden-shifting framework of *McDonnell Douglas*. Plaintiff bears the initial burden of establishing a prima facie case of retaliation by showing: (1) that [she] engaged in protected activity; (2) that the defendant decision maker knew of the exercise of that protected activity; (3) that an adverse employment action was subsequently taken against [her]; and (4) that there was a causal connection between the protected activity and the adverse employment action . *Fuhr v. Hazel Park School District*, 710 F.3d 668, 674 (6th Cir. 2013).

Plaintiff contends that her employment was terminated in retaliation for raising concerns throughout her tenure at St. Claire. In support of her contention, Plaintiff refers to four memos she submitted to her supervisors. The first of these memos is a one paragraph note dated July 21, 2010 in which Plaintiff states that a SRNA administered general anesthesia without a CRNA or physician [Docket No. 27-15]. In her response to Defendant's dispositive motion and in reference to this memo, Plaintiff points out that in her deposition, Lorrie Springer confirmed that "this should not happen." Plaintiff further states in the memo that she brought the incident to the attention of other CRNAs "last month," thereby implying that no corrective action was taken. While this memo clearly recounts an occurrence against hospital regulations, there is nothing in it, or in the record before the Court, that Plaintiff's "report" of the occurrence somehow lead to or resulted in Plaintiff's termination.

10

In two memos, dated March 10, 2011 and March 21, 2011, Plaintiff refers to Ms. Springer's remark regarding "playing the race card." In the March 10, 2011 memo, Plaintiff stated in that she spoke to Ms. Amburgey about the remark in September 2010 and Ms. Amburgey talked to Ms. Springer about the concern. Although Plaintiff maintains that no one investigated her earlier complaints, but she later admitted that she does not know whether someone investigated. [Deposition of Bertha Doss, Docket No. 15, p. 167]. In fact, St. Claire's Vice-President of Quality and Resource Management, Linda Fultz, investigated Plaintiff's concerns and found that Plaintiff's supervisors handled them appropriately and in accordance with hospital's policy at the time the incident occurred. [Deposition of Linda Fultz, Docket No. 22, p. 22]. Plaintiff also admits that Ms. Springer called her to apologize and talked to her about the concerns. [Deposition of Bertha Doss, Docket No. 15, p. 170]. Plaintiff did not make any other complaints to the hospital's administration about this incident until the March 2011 memoranda, and by that point, it seems that the incident had already been handled in an appropriate manner, according to St. Claire's policies. [Deposition of Linda Fultz, Docket No. 22, p. 93 and 109]. There appears to be some irony in Plaintiff's criticism of St. Claire's response to her complaints as, according to Ms. Fultz, when asked about the incidents in her memo, Plaintiff refused to provide additional information or otherwise elaborate [Deposition of Linda Fultz, Docket No. 22, p. 22]. Indeed, according to Mrs. Fultz, Plaintiff's lack of cooperation restrained her ability to investigate. Id. Significantly, Plaintiff admitted that she was aware at the time she prepared the March 21, 2011 memo that she was being terminated. [Deposition of Bertha Doss, Docket No. 15, p. 172]. Defendant suggests that in writing the memos, Plaintiff attempted to shield herself from St. Claire's decision to

terminate her employment by submitting the and alleging unfair treatment and retaliation. This is merely suspicion on the part of Defendant. The Court need not inquire into Plaintiff's motivation in this regard. As the memoranda were submitted after Plaintiff knew her employment was being termination, the evidentiary value of the memoranda is greatly undermined. As is the relevance of a memoranda dated April 1, 2011.

Assuming arguendo that Plaintiff was, in fact, engaged in protected activity, her claim of retaliation still fails. Most crippling to Plaintiff's is the absolute lack of evidence of any causal connection between her "reports" and the termination of her employment. The record is devoid of any evidence, direct or circumstantial, that but for her complaints, Plaintiff's employment would not have been terminated. When asked in her deposition what evidence she has that she was retaliated against, Plaintiff responded: "The evidence that I have is I was terminated because of that. That's the evidence." [Deposition of Bertha Doss, Docket No. 15, p. 58].

Plaintiff's employment at St. Claire was governed by an Agreement pursuant to which her employment could be terminated without cause. In essence, she was an "at will" employee. Title VII and the Kentucky Civil Rights Act ban discrimination and retaliation even in "at will" employment. However, Plaintiff has not presented sufficient evidence to trigger the protections of these statutes.

### IV. CONCLUSION

Summary judgment is mandated against a party who has failed to establish an essential element of her case after adequate time for discovery. In such a situation, there is no genuine issue of material fact as the failure to prove an essential fact renders all other facts irrelevant. *Celotex v. Cartett*, 477 U.S. at 322-323. In order to withstand summary judgment, Plaintiff bore

the burden of presenting a prima facie case of discrimination or retaliation. Case law mandates that she bring forth more than a "mere scintilla" of evidence in her favor. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). She has not. Even armed with detailed discovery, Plaintiff's proof falls short.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's St. Claire Medical Center, Inc. d/b/a St. Claire Regional Medical Center's Motion for Summary Judgment [Docket No. 24] be **SUSTAINED**.

This 14th day of March, 2014.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge